USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 09/24/2021

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------- X
                                            :

SCOTT ERIC SANDERS, an individual, SCOTT   :
ERIC SANDERS, as father of, and fiduciary for, Jo. S. :
and Je. S.,[1]                                    :            20-CV-5621 (VEC)

                                          :

                            Plaintiffs,       :        OPINION & ORDER

                                          :

           -against-                       :

                                          :

MARCIE LYN SANDERS, an individual, *et al*.,   :

                                          :

                          Defendants.     :

                                          :
---------------------------------------------------------------- X

VALERIE CAPRONI, United States District Judge:

       Scott Sanders ("Scott") sued his ex-wife Marcie Sanders ("Marcie"), members of her family, her former attorneys and their law firms, her former financial advisor, her former accountant, and her former accounting firm for breach of fiduciary duty, civil conspiracy, violations of the Racketeer Influenced and Corrupt Organizations ("RICO") Act, conversion, and unjust enrichment.  Compl., Dkt. 1-2 ¶¶ 5–18, 26–64.  Scott also seeks an equitable lien and a constructive trust against certain property and an injunction preventing Marcie from transferring any assets.  *Id.* ¶¶ 65–71.  Ten of the Defendants moved to dismiss the complaint for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[2]  For the following reasons, Defendants' motion to dismiss is GRANTED, and the claims against the moving Defendants are DISMISSED with prejudice.

---

[1]     In Plaintiff's complaint, the caption included the full names of his children, both of whom were minors at the time.  Pursuant to Fed. R. Civ. P. 5.2(a)(3), minors should only be referenced by their initials in Court filings.  Although the ECF docket sheet associated with this case properly lists the children only by their initials, the parties have consistently filed documents that improperly included their full names.

[2]     Marcie's former accountant and accounting firm, Defendants Cosmo Occhiogrosso and CJO Consulting LTD, have not appeared in this matter, and they did not join the motion to dismiss.

## BACKGROUND[3]

This case involves purported tort and statutory claims that spawn from a fractious, messy, and drawn-out divorce.  On May 25, 2018, after two years of proceedings, Judge Bottinelli of the New Jersey Superior Court entered a judgment of divorce that terminated Scott and Marcie's marriage and divided their assets.  Ever since, Scott has repeatedly sought to get New York, New Jersey, and Florida courts to relitigate the divorce judgment's distribution of property.  He has asserted again and again that Marcie and a host of others engaged in a vast, multi-year conspiracy to defraud him of his assets.  Because the property ownership issues have long been resolved, however, Scott is collaterally estopped from re-litigating ownership of the relevant assets.  Scott has already had multiple bites of the apple.  Enough is enough.

### I.      The Properties

Scott and Marcie met in 1997 and were married in 2000.  Divorce Judgment, Dkt. 61-3 at 5; N.J. App. Opening Brief, Dkt. 61-6 at 24.  They have two children together, Jo. S. and Je. S.[4] Compl. ¶ 4.  Scott and Marcie were also business partners and owned assets that are at the heart of this lawsuit.  *See id.* ¶ 24.

---

[3]      The Court accepts the non-conclusory factual allegations in the complaint as true for the purposes of the motion.  *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014).

[4]      Scott purports to bring this lawsuit on behalf of himself and as the father and alleged fiduciary of Jo. and Je. S.  Compl. Dkt. 1-2.  The Court is skeptical that Scott has the legal authority to sue on behalf of his children.  At the time this lawsuit was filed, both children were minors, and Marcie had sole legal custody of both of them.  *See* Divorce Judgment, Dkt. 61-3 at 5, 22.  Pursuant to Fed. R. Civ. P. 17(c), a minor can be represented in a lawsuit by, *inter alia*, his guardian or other like fiduciary.  By all indications, Scott is neither and therefore had no authority to bring this lawsuit on behalf of his children.  Indeed, on May 28, 2021, Judge Bottinelli ordered Scott, within 10 days, to remove his children's names from all lawsuits that he had filed.  N.J. Order, Dkt. 81-1 ¶ 6.  Scott has not sought to remove his children's names from this case.  Because the caption on ECF properly lists the children by their initials, the Court will take no further action at this time vis-à-vis Scott's decision to file a lawsuit in his children's names.

For purposes of this opinion, the particulars of the assets, most of which are real property, are not critical.  Suffice it to say that Scott's claims arise from the issue of ownership of the following assets:

(i)     2045 McDonald Avenue, Brooklyn, New York 11223 (the "McDonald Avenue Property").  *Id.* ¶ 25(a)(i).

(ii)    Prime Services Enterprises, Inc. and other affiliated companies (collectively "Prime").  *Id.* ¶ 25(f)(i).[5]

(iii)   43 Grafe Street, Staten Island, New York 10309 (the "Grafe Street Property").  *Id.* ¶ 25(b)(i).

(iv)    3100 North Ocean Boulevard, Unit No. 1604, Fort Lauderdale, Florida 33308 (the "Fort Lauderdale Condo").  *Id.* ¶ 25(c)(i).

(v)     69-20 48th Avenue, Woodside, New York 11377 (the "Woodside Property").  N.J. App. Opening Brief at 26.

(vi)    1 Cedarwood Lane, Saddle River, New Jersey 07458 (the "Saddle River Property").  *Id.* at 27.

(vii)   TGAR Enterprises, Inc. ("TGAR").[6]  Compl. ¶ 25(d)(i).

(viii)  1092 Rogers Avenue, Brooklyn, NY 11226 ("Rogers Avenue Enterprises").[7]  *Id.* ¶ 25(e)(i).

Approximately two years before Marcie filed for divorce, Scott was convicted of conspiracy to commit mail and wire fraud, mail fraud, and aggravated identity theft.  Crim. Judgment, Dkt 61-1 at 2.  He was sentenced to 121 months in prison and ordered to pay restitution in the amount of $4,878,592.30.  *Id.* at 3, 6.

---

[5]     Prime operated a taxi-cab business that specialized in the renting of for-hire livery vehicles.  Compl. ¶ 25(f)(i).

[6]     TGAR operated a combination gas station/convenience store/auto repair business in Queens, New York.  Compl. ¶ 25(d)(i).

[7]     Rogers Avenue Enterprises operated a combination car wash/gas station/convenience store at that location.  Compl. ¶ 25(e)(i).

Following Scott's conviction but before Marcie filed for divorce, some of the couple's assets were sold.  On behalf of TGAR, many years prior, Scott had negotiated a right of first refusal to purchase the land on which TGAR's business operated.  Compl. ¶¶ 25(d)(i), 25(d)(iv). At some point, the right of first refusal was sold for $1.2 million; Scott alleges that Marcie stole those proceeds by fraudulently obtaining signature authority over TGAR's bank account.  *Id.* ¶ 25(d)(iv).  On March 1, 2016, Prime terminated its operations after a sale that Scott had purportedly arranged fell through.  *Id.* ¶ 25(f)(vi).  Prime's prospective buyers had tendered $75,000 as earnest money for the purchase of Prime; Scott alleges Marcie stole the earnest money after the deal fell through.  *Id.* ¶ 25(f)(v).  Scott further contends that in March 2016, pursuant to a power of attorney, Marcie sold Rogers Avenue Enterprises for $750,000.  *Id.* ¶ 25(e)(iv).  Marcie used the sale proceeds from TGAR and Rogers Avenue Enterprises to satisfy the mortgage on the Woodside Property and to pay down the mortgage on the Saddle River Property.  N.J. App. Resp. Brief, Dkt. 61-6 at 133–37.  Scott alleges that he is the proper owner of all of the assets and, with respect to assets that were sold, that he is entitled to the proceeds and any associated damages.  Compl. ¶¶ 35, 42, 54, 60, 64.

## II.    Related Litigation

On June 15, 2016, Marcie filed for divorce — citing irreconcilable differences — in the Superior Court of New Jersey.  Divorce Judgment at 5.  Scott answered the petition and filed counterclaims, including that Marcie had engaged in fraud and theft with the assistance of unnamed others.  Divorce Ans., Dkt. 61-5.  While the divorce proceedings were pending, Scott attempted to use the New York courts to interfere with Marcie's management, operation, and

sale of certain assets by attaching *lis pendens*, despite the fact that Marcie was acting with the full support of the divorce court.  Divorce Judgment at 11.[8]

On May 25, 2018, Judge Bottinelli entered a judgment of divorce.  *Id.* at 2–3.  The Saddle River Property, the Fort Lauderdale Condo, and the McDonald Avenue Property were awarded to Marcie.  *Id.* at 51–52.  Although Marcie was also awarded any contents found in those properties, she was required to return to Scott any of his personal property that remained at those locations.  *Id.* at 51.  During the course of the divorce proceedings, Marcie had sold the Grafe Street Property.  Compl. ¶ 25(b)(iv).  Judge Bottinelli ordered the proceeds from that sale be divided equally between Scott and Marcie.  Divorce Judgment at 51.  The Woodside Property was awarded to Scott.  *Id.* at 53.  Additionally, Judge Bottinelli ordered that Scott and Marcie would each retain the individual retirement accounts and bank accounts in their names.  *Id.* at 54.

Scott twice moved for reconsideration of the divorce judgment.  N.J. Order, Dkt. 61-6 at 184–89.  Both motions were denied because they did not raise the possibility that "the court's decision [was] based on plainly incorrect reasoning, [that] the court failed to consider evidence, or [that] there [was] good reason for [the court] to reconsider new information."  *Id.* at 186, 188.  On January 23, 2019, Scott appealed the divorce judgment to the New Jersey Appellate Division.  N.J. App. Opening Brief at 85.  On July 21, 2020, the Appellate Division affirmed the judgment.  N.J. App. Opinion, Dkt. 61-7 at 23.[9]

---

[8]     Despite an order barring such actions, *see* N.J. App. Opinion, Dkt. 61-7 at 5, Scott filed multiple lawsuits in New York state courts alleging breach of contract, fraud, and many of the counts that he alleges here.  N.J. App. Resp. Brief, Dkt. 61-6 at 108–10 (recounting the lawsuits).  Judge Bottinelli found that Scott used the lawsuits to interfere with Marcie's rightful ability to control and to manage the McDonald Avenue Property, the Woodside Property, and the Grafe Street Property.  Divorce Judgment at 11.  In those lawsuits, Scott never disclosed the ongoing divorce proceedings, his marital relationship with Marcie, or the jurisdiction of the New Jersey courts over those properties.  *Id.*  Scott eventually complied with the divorce court's order to dismiss the lawsuits but only after incurring $40,200 in sanctions.  *Id.* at 13.

[9]     Although not entirely clear from the record, it appears Scott has brought a number of other lawsuits against Marcie and the other Defendants.  On May 28, 2021, a clearly exasperated Judge Bottinelli enjoined Scott from

### III.     This Lawsuit

On February 28, 2020, Scott brought this lawsuit in the Circuit Court of the Fifteenth
Judicial Circuit for Palm Beach County, Florida.  Notice of Removal, Dkt. 1 ¶ 1.[10]  On May 1,
2020, Defendants removed the case to the U.S. District Court for the Southern District of
Florida.  *Id.* ¶ 12.  Defendants premised the removal on the court's federal question jurisdiction
over Plaintiff's RICO claim.  *Id.* ¶¶ 4–7.  On July 20, 2020, this case was transferred from the
Southern District of Florida to the undersigned.  Transfer Order, Dkt. 43 at 10.

Scott alleges six causes of action: three are against Marcie alone (breach of fiduciary
duty; unjust enrichment; and a request for equitable lien, constructive trust, and injunctive relief),
Compl. ¶¶ 26–35, 61–71; and three are against all Defendants (civil conspiracy; civil RICO; and
conversion), *id.* ¶¶ 36–60.  The six causes of action involve allegations with respect to the
following assets: the McDonald Avenue Property, the Grafe Street Property, the Fort Lauderdale
Condo, TGAR, Rogers Avenue Enterprises, and Prime.  *Id.* ¶¶ 25(a)(i)–25(f)(vi).  Scott also
makes allegations with respect to what he contends is his personal property, including gold coins,
jewelry, retirement accounts, cash, and cash equivalents.  *Id.* ¶¶ 22(d), 22(e).

---

bringing any suits in other jurisdictions that concern the ownership and allocation of assets distributed in the divorce
judgment.  N.J. Order, Dkt. 81-1 ¶ 5.

The Court takes no position on whether Judge Bottinelli's order applies retroactively to this case.  The
complaint in this matter was filed on February 28, 2020, *see* Notice of Removal, Dkt. 1, over a year before Judge
Bottinelli's order restraining Scott from filing further lawsuits.  Although the moving Defendants filed the order as
supplemental authority in support of their collateral estoppel claims, *see* Supp. Letter, Dkt. 81, they did not seek any
particular relief based on the order.

[10]     This lawsuit was Scott's second attempt to bring this iteration of his claims.  On December 3, 2019, Scott
filed a lawsuit before the U.S. District Court for the Southern District of Florida against the same twelve defendants
sued here.  Resp., Dkt. 65-1 at 11.  On February 13, 2020, that court dismissed the case for lack of subject-matter
jurisdiction; Scott had premised jurisdiction on diversity, but there was not complete diversity among the parties.  *Id.*
at 13.  Although Judge Martinez of the Southern District of Florida appears to have given Scott the opportunity to
replead based on federal question jurisdiction, he chose to refile his case in state court instead.  *See* Reply, Dkt. 66 at
3.

On September 4, 2020, ten of the Defendants moved to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim.  Mem. of Law, Dkt. 62 at 40.  Scott opposed the motion.  Resp., Dkt. 65-1 at 8.

## LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must allege sufficient facts, taken as true, to state a plausible claim for relief."  *Johnson v. Priceline.com, Inc.*, 711 F.3d 271, 275 (2d Cir. 2013) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)).  "[A] complaint does not need to contain detailed or elaborate factual allegations, but only allegations sufficient to raise an entitlement to relief above the speculative level."  *Keiler v. Harlequin Enters. Ltd.*, 751 F.3d 64, 70 (2d Cir. 2014) (citation omitted).  The Court accepts all factual allegations in the complaint as true and draws all reasonable inferences in the light most favorable to the plaintiff.  *See Gibbons v. Malone*, 703 F.3d 595, 599 (2d Cir. 2013).  The Court, is not, however, "bound to accept as true a legal conclusion couched as a factual allegation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555).[11]

## DISCUSSION

### I.     Collateral Estoppel May Properly Be Considered on a Motion to Dismiss

Defendants contend that the complaint must be dismissed in its entirety pursuant to the doctrine of collateral estoppel.  Mem. of Law at 10–19.[12]  As a threshold matter, Scott argues

---

[11]     Scott argues that the Court should remand the case to Florida state court because, given the lack of complete diversity among the parties, the Court lacks subject-matter jurisdiction.  Resp. at 3–4.  Although Scott is correct that there is not complete diversity among the parties, diversity is not the basis of the Court's jurisdiction.  As Defendants explained in their notice of removal, *see* Notice of Removal ¶¶ 4–7, the Court's subject-matter jurisdiction is premised on a federal question, namely Scott's allegations that all Defendants violated the Civil Racketeer Influenced and Corrupt Organizations ("RICO") Act.  *See* 18 U.S.C. § 1964.  The Court has supplemental jurisdiction over Scott's state law claims, which all appear to arise from the same bundle of operative facts as the federal claim.  *See* 28 U.S.C. § 1367; *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966).

[12]     Defendants also contend that Scott's complaint must be dismissed because the statutes of limitations for many of his claims have run and because Scott has not made sufficient factual allegations to state a claim.  *See*

that collateral estoppel cannot be the basis for a motion to dismiss because it is an affirmative

defense that must be pled and proven.  Resp. at 4.  Scott has the law wrong: although collateral

estoppel is an affirmative defense pursuant to Rule 8(c) of the Federal Rules of Civil Procedure,

that does not preclude it from also forming the basis for a motion to dismiss in certain

circumstances.  *McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004) ("[A]n affirmative defense

may be raised by a pre-answer motion to dismiss under Rule 12(b)(6), without resort to summary

judgment procedure." (citations omitted)); *see Ricci v. Teamsters Union Loc. 456*, 781 F.3d 25,

28 (2d Cir. 2015) ("Although preemption . . . is an affirmative defense, it can still support a

motion to dismiss if the statute's barrier to suit is evident from the face of the complaint."

(cleaned up)).  Dismissal pursuant to an affirmative defense is appropriate when that defense

appears on "the face of the complaint," *id.* (citations omitted), or when the defense is based on

"matters of which the court may take judicial notice," *Conopco, Inc. v. Roll Int'l*, 231 F.3d 82, 86

(2d Cir. 2000).  Matters of public record are appropriate for judicial notice.  *Giraldo v. Kessler*,

694 F.3d 161, 164 (2d Cir. 2012).  The goal, in part, of collateral estoppel is to prevent a party

from imposing costs on an adversary by endlessly relitigating matters that have already been

litigated.  *See Johnson v. Watkins*, 101 F.3d 792, 795 (2d Cir. 1996) ("[Collateral estoppel]

promotes important goals: it allows a party only one opportunity to litigate an issue thereby

conserving the time and resources of the parties and the court . . . ." (citations omitted)).  If the

rules precluded consideration of collateral estoppel at the motion to dismiss stage, much of that

benefit would be obliterated.

---

Mem. of Law, Dkt. 62 at 19–40.  Although the Court believes many of those arguments are meritorious, the Court
does not address them because collateral estoppel is a sufficient basis for the dismissal of all claims.

In this case, collateral estoppel is an appropriate ground for dismissal because it is based on the divorce judgment, which not only appears on the face of the complaint[13] but also is a matter of public record appropriate for judicial notice. *See e.g.*, *Williams v. N.Y.C. Hous. Auth.*, 816 F. App'x 532, 534 (2d Cir. 2020) (holding that state court decisions are "appropriate for judicial notice" when ruling on motions to dismiss for failure to state a claim); *Byrd v. City of N.Y.*, No. 04-CV-1396, 2005 WL 1349876 at *1 (2d Cir. June 8, 2005) (finding that a stipulation of settlement, as a document filed in connection with a prior lawsuit, was subject to judicial notice and was properly considered on a motion to dismiss); *Kramer v. Time Warner Inc.*, 937 F.2d 767, 773 (2d Cir. 1991) (holding that a court can take judicial notice of "related state litigation" when considering a motion to dismiss).  Accordingly, because the basis for collateral estoppel appears on the face of the complaint and is a matter of public record, it may be considered on a motion to dismiss.

Scott argues that judicial notice is not appropriate because the doctrine cannot be used to establish the truth of the matters asserted.  Letter Resp., Dkt. 82 at 1–2.  Contrary to Scott's contention, however, the Court is not looking to the divorce judgment for its findings of fact; the Court is looking to the divorce judgment to determine the scope of what has already been decided.  *See Liberty Mut. Ins. Co. v. Rotches Pork Packers, Inc.*, 969 F.2d 1384, 1388 (2d Cir. 1992) ("A court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings." (citations omitted)); *Parker v. Est. of Blair*, No. 19-CV-21093, 2020 WL 6707963 at *4 (D.N.J. Nov. 16, 2020) ("Such judicial notice is particularly appropriate where, as here, [the court] consider[s] the decision not as independent evidence of the relevant events, but

---

[13]   Scott mentions the divorce proceedings in multiple paragraphs of the Complaint, *see* Compl. ¶¶ 25(b)(iv), 25(d)(vi), 25(f)(vi), and he quotes from the divorce judgment on one occasion, *id.* ¶ 25(b)(iv).

only for the purpose of ascertaining the scope [of] what it decided."), *appeal dismissed*, No. 20-3558, 2021 WL 2470496 (2d Cir. May 4, 2021).

To support his contention that "affirmative defenses . . . must be pled and proven," *see* Resp. at 4–5, Scott cites *General S. Indus., Inc. v. Shub*, 300 F. App'x 723 (11th Cir. 2008). *General Southern* is an Eleventh Circuit decision applying Alabama law, and it is not controlling on this Court. Even if it were controlling authority, it is easily distinguished. *General Southern* involved a disagreement over a commission for a commercial lease transaction. *Id.* at 724. The affirmative defense at issue was plaintiff's lack of a real estate license. *Id.* at 727. The court held that defendants could not rely on the lack of license as the basis for their motion to dismiss because an Alabama statute required that the lack of license be pled and proven. *Id.* at 727–28. Here, not only is there no equivalent statute, but courts frequently rely on court judgments to ascertain whether collateral estoppel applies. *See, e.g.*, *Siji Yu v. Knighted, LLC*, 811 F. App'x 55, 58 (2d Cir. 2020) (affirming the district court's grant of a motion to dismiss based on collateral estoppel); *Malcolm v. Honeoye Falls-Lima Cent. Sch. Dist.*, 629 F. App'x 87, 88–89 (2d Cir. 2015) (same); *Wall v. Union of NA, Laborers' Int'l*, 276 F. App'x 68, 70 (2d Cir. 2008) (same).

In short, Scott's argument that collateral estoppel is not available on a motion to dismiss is without merit.

## II.    New Jersey's Doctrine of Collateral Estoppel Requires Dismissal

Defendants argue that New Jersey's collateral estoppel doctrine requires that this case be dismissed.  Mem. of Law at 10–19.  When a party seeks to apply collateral estoppel based on a state court decision, the court applies the collateral estoppel doctrine of the originating state.  *See Malcolm,* 629 F. App'x at 88 ("It is axiomatic that a federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." (cleaned up)).  In this case, the underlying state court decision is the divorce judgment, entered by the Superior Court of New Jersey.

A prior New Jersey judgment has collateral estoppel effect in New Jersey if:

> (1) The issue to be precluded is identical to the issue decided in the prior proceeding; (2) the issue was actually litigated in the prior proceeding; (3) the court in the prior proceedings issued a final judgment on the merits; (4) the determination of the issue was essential to the prior judgment; and (5) the party against whom the doctrine is asserted was a party to or in privity with a party to the earlier proceeding.

*Parker*, 2020 WL 6707963 at *4 (citations omitted).  Additionally, because the collateral estoppel doctrine finds its origins in equity, New Jersey law requires that it must be applied with an eye towards fairness for all parties.  *Id.* at *5; *Wallace v. Keystone Printed Specialties Co., Inc.*, No. 14-CV-5978, 2016 WL 5403088 at *3 (D.N.J. Sept. 27, 2016).[14]

---

[14]    New Jersey has a separate doctrine, the entire controversy doctrine, which, "seeks to impel litigants to consolidate their claims arising from a single controversy whenever possible."  *Dimitrakopoulos v. Borrus, Goldin, Foley, Vignuolo, Hyman and Stahl, P.C.*, 237 N.J. 91, 98 (2019) (citations omitted).  Pursuant to the entire controversy doctrine, parties may not assert claims that have previously been raised — or could have been raised — in a prior lawsuit.  *See* N.J. Ct. R. 4:30A ("Non-joinder of claims required to be joined by the entire controversy doctrine shall result in the preclusion of the omitted claims to the extent required by the entire controversy doctrine."); *Wadeer v. N.J. Mfrs. Ins. Co.*, 220 N.J. 591, 605 (2015) ("This doctrine embodies the principle that the adjudication of a legal controversy should occur in one litigation in only one court; accordingly, all parties involved in a litigation should at the very least present in those proceedings all of their claims and defenses that are related to the underlying controversy." (cleaned up)).

Here, the entire controversy doctrine precludes all of Scott's claims against Marcie.  Although Scott raised some of his claims against Marcie in the divorce proceeding, *see* Divorce Ans., Dkt. 61-5 at 4–13 (asserting counterclaims of fraud, unjust enrichment, conversion, and conspiracy and seeking a constructive trust), his claims against Marcie asserted for the first time in this lawsuit — including violations of the RICO Act and requests for an equitable lien against certain property as well as an injunction precluding Marcie from transferring assets — could

All five factors and considerations of fairness support the application of New Jersey's collateral estoppel doctrine and the dismissal of this case.  Only the first two factors, whether the claims are identical and whether the issue was actually litigated, are even in dispute.[15]

## A.  The Issue to Be Precluded Is Identical to the Issue Decided in the Prior Proceedings

### 1.  Both Cases Concern Rightful Ownership

Both the divorce proceedings and this federal lawsuit involve the question of the rightful ownership of the same assets.  Although he dresses up his claims as conspiracy, violations of the RICO Act, fraud, unjust enrichment, and other torts, the factual issue underlying all of Scott's claims — who owns certain assets — was resolved in the New Jersey divorce proceedings.

Under New Jersey law, courts determine whether the issues in two proceedings are identical by assessing:

> (1) Whether the acts complained of and the demand for relief are the same (that is, whether the wrong for which redress is sought is the same in both actions); (2) whether the theory of recovery is the same; (3) whether the witnesses and documents necessary at trial are the same (that is, whether the same evidence necessary to maintain the second action would have

---

have been raised in the divorce proceeding, suggesting that the entire controversy doctrine precludes those claims as well.

[15]    The remaining factors are plainly met on the face of the filings.  With respect to the third factor, that the court in the prior proceedings issued a final judgment on the merits, the New Jersey Superior Court took and assessed evidence, entered findings of fact and conclusions of law, and entered a final judgment.  That judgment was affirmed on appeal to the New Jersey Superior Court, Appellate Division.  N.J. App. Opinion at 23.  Accordingly, because the divorce court issued a final judgment on the merits, the third factor has plainly been met.

Determination of the ownership of the various assets was essential to the divorce judgment so the fourth factor is satisfied.  Divorce proceedings inherently involve, among other things, a division of assets.  The determination of who owned what was, therefore, essential to that ruling.

As to the fifth factor, that the party against whom the doctrine is asserted was a party to or in privity with a party to the earlier proceeding, Scott insists that Defendants must establish privity with Marcie, as she is the only Defendant that was party to the divorce proceedings.  Supp. Resp., Dkt. 72 at 4.  Scott's argument misunderstands the requirement of privity under New Jersey's collateral estoppel doctrine.  It does not matter whether the party asserting the doctrine was a party to or in privity with a party to the prior proceedings.  What matters is whether the party *against* whom the doctrine is being asserted was a party to or in privity with a party to the prior proceedings. *See Roggio v. Fed. Deposit Ins. Co.*, No. 09-CV-1733, 2020 WL 6270746, at *4 (D.D.C. Oct. 25, 2020) ("New Jersey recognizes nonmutual defensive collateral estoppel.").  Because Defendants are asserting collateral estoppel against Scott, and because Scott is a party to both proceedings, the fifth factor has clearly been met.

been sufficient to support the first); and (4) whether the material facts
alleged are the same.

*First Union Nat'l Bank v. Penn Salem Marina, Inc.*, 190 N.J 342, 353 (2007) (cleaned up).

Here, all four elements are met.  Scott has alleged in both proceedings that Marcie and
her associates control assets that rightfully belong to him.  In both proceedings, he has demanded
that he be deemed the rightful owner of the assets and that assets under Marcie's control be
transferred to him or that she be ordered to pay damages for improperly interfering with,
transferring, or selling his assets.  The divorce proceedings involved detailed accountings of the
assets — including their ownership history and calculations of value — through both oral
testimony and documentation.  In this matter, the same evidence would be presented to prove
ownership.  And finally, the facts surrounding the assets are the same in both proceedings.  Since
the time of the divorce judgment, nothing new has happened relative to ownership of the assets.
Accordingly, the issue in the two proceedings —ownership of the pertinent assets — is identical.

Scott argues that because this is a tort and RICO action, a divorce judgment cannot be the
basis for collateral estoppel because the relief sought is inconsistent.  Supp. Resp., Dkt. 72 at 3.
Scott fails, however, to acknowledge that a judgment of divorce does more than dissolve a
relationship and effect the legal separation of spouses.  Divorce includes an equitable distribution
of property, including determining ownership and dividing assets fairly and justly.  *Steneken v.
Steneken*, 183 N.J. 290, 299 (2005).  Scott cites various decisions to support his contention that a
divorce judgment cannot be the grounds for collateral estoppel, but each case is either inapposite
or unpersuasive.  Plaintiff is not seeking relief for harms unrelated to the distribution of property,
such as for physical assault or intentional infliction of emotional distress.  *See* Supp. Resp. at 3
(citing *Aubert v. Aubert*, 129 N.H. 422, 426 (1987) (finding collateral estoppel inapplicable
because plaintiff was suing defendant for shooting her in the face, an issue not decided in the

couple's divorce); *id.* (citing *Koepke v. Koepke*, 52 Ohio App. 3d 47, 48 (1989) (finding

collateral estoppel did not bar intentional tort claims against a third person who was not party to

the divorce proceedings)).  Additionally, the Court declines to consider cases that Scott cites that

relate to *res judicata*,[16] a legal doctrine that focuses on whether claims — not issues — are

identical.  Assessing whether claims are identical is a fundamentally different inquiry than

considering whether issues are identical.  *See Thomas v. Venditto*, 925 F. Supp. 2d 352, 361 n.8

(E.D.N.Y. 2013) (finding that *res judicata* does not apply when the initial forum did not have the

power to award the full measure of relief sought in the later litigation, but that collateral estoppel

may still apply in such instances because it lacks that requirement); *Dash v. Bank of Am. Corp.*,

No. 18-CV-4807, 2019 WL 1780140, at *6 (S.D.N.Y. Apr. 23, 2019) (discussing the differences

between res judicata and collateral estoppel).  In short, the cases on which Scott relies are not

persuasive precedent on the question of whether collateral estoppel applies in this case.

Moreover, courts often apply collateral estoppel to preclude subsequent litigation of

property ownership when ownership was decided in a divorce proceeding.  *See, e.g., Martinez v.

Mkt. Traders Inst., Inc.*, 757 F. App'x 815, 816 (11th Cir. 2018) (holding that findings regarding

property ownership from divorce proceedings could be used to collaterally estop re-litigation of

ownership); *T.A. v. Leff*, No. 17-CV-4291, 2018 WL 5077163 at *10–11 (E.D.N.Y. July 19,

2018) (holding that after a divorce court found that there was no unlawful devaluation of marital

properties, further litigation founded on that alleged devaluation was collaterally estopped);

*Galtieri v. N.Y.C. Police Pension Fund*, No. 12-CV-1159, 2014 WL 4593927 at *11–12

---

[16]     *See* Supp. Resp. at 3–4 (citing *Linden Airport Mgmt. Corp. v. N.Y.C. Econ. Dev. Corp.*, No. 08-CV-3810, 2011 WL 2226625 at *5 (S.D.N.Y. June 1, 2011) (determining whether *res judicata* applies); *Xiao Yang Chen v. Fischer*, 6 N.Y.3d 94, 102 (2005) (same); *Watkins v. Resorts Int'l Hotel & Casino, Inc.*, 124 N.J. 398, 413 (1991) (same)).

(S.D.N.Y. Sept. 15, 2014) (finding that divorce judgment requiring garnishment of pension payments for alimony collaterally estopped litigation seeking to terminate the garnishment).

In short, collateral estoppel precludes re-litigation of the issue of asset ownership, even when the prior proceeding is a divorce.

### 2. Both Cases Concern the Same Assets

The proper ownership of each of the assets discussed in this lawsuit was decided in the divorce proceedings.

#### a. McDonald Avenue Property

Scott alleges that Marcie, with the help of other Defendants, sold the McDonald Avenue Property and stole the proceeds for her own use. Compl. ¶ 25(a)(vi). In the divorce proceedings, Judge Bottinelli ruled that the McDonald Avenue Property belonged to Marcie as a premarital asset that was already in her name. Divorce Judgment at 45–46, 52. When the appellate court affirmed the judgment of the divorce court, it confirmed that Marcie was the owner of the McDonald Avenue Property. N.J. App. Opinion at 17. Because the rightful ownership to the McDonald Avenue Property was decided in the divorce, Scott is estopped from relitigating that issue.

#### b. Grafe Street Property

Scott alleges that Marcie, with the help of some of the Defendants, sold the Grafe Street Property at below-market value and kept the proceeds for herself. Compl. ¶ 25(b)(iv). Scott further alleges that the divorce was an effort by Marcie to have a court ratify the sale. *Id.* Marcie sold the Grafe Street Property, and she provided the divorce court with details of the sale. Divorce Judgment at 38. The divorce judgment ordered those proceeds to be split evenly

between Scott and Marcie.  *Id.* at 51.[17]  Scott's claims, by their very nature, require establishing

that Scott was entitled to more than half of the sale proceeds (either because the property was

worth more than the sale price or because the proceeds should not have been split evenly).

Because the issue of the allocation of the proceeds from the sale of the Grafe Street Property was

resolved in the divorce, Scott is estopped from relitigating that issue.

### c.  Fort Lauderdale Condo

Scott alleges that, beginning in October 2014, Marcie, with the help of some of the

Defendants, kept the rent collected from the Fort Lauderdale Condo for herself, instead of

sharing it with Scott.  Compl. ¶ 25(c)(v).  Marcie informed the divorce court that the Fort

Lauderdale Condo was a rental property and that she had been its sole owner since December

2016.  Divorce Judgment at 38.  With full knowledge that Marcie had been collecting rent from

the property, the divorce court awarded the property to Marcie and did not require her to pay any

of the collected rent to Scott.  *Id.* at 51.  In affirming the judgment of the divorce court, the

appellate court noted that Marcie was confirmed to be the owner of the Fort Lauderdale Condo.

N.J. App. Opinion at 17.  Accordingly, the issue of ownership of the Fort Lauderdale Condo and

rightful ownership of rent proceeds from the property were resolved in the divorce proceedings.

Scott is estopped from re-litigating the issue.

### d.  Personal Property: Coins, Jewelry, Accounts, Cash, Etc.

Scott contends that Marcie wrongfully acquired his personal property including gold

coins, jewelry, tax refunds, retirement accounts, choses in action, cash, and cash equivalents.

Compl. ¶¶ 22(d), 22(e).  Judge Bottinelli determined that bank and retirement accounts would

---

[17]    In affirming the judgment of the divorce court, the appellate court noted that the proceeds from the sale of the Grafe Street Property were split between Scott and Marcie.  N.J. App. Opinion at 17.

remain with the party whose name was on the account.[18]  Divorce Judgment at 54.  Further,

Judge Bottinelli ruled that, although personal property located in real property that was awarded

to Marcie would also be awarded to her, Scott's personal items located in those properties must

be returned to Scott.  *Id.* at 51.  Accordingly, the matter of ownership of personal property was

resolved in the divorce proceedings, and Scott is estopped from relitigating the issue.

### e.  Prime

Scott seeks proceeds and damages from what he claims was an intentionally sabotaged

sale of Prime by Marcie and other Defendants.  Compl. ¶¶ 25(f)(iv)–25(f)(vi).  He further alleges

that Marcie stole $75,000 in earnest money provided by the prospective buyers.  *Id.* ¶ 25(f)(v).

Scott made those same allegations in the divorce proceedings.  *See e.g.*, Divorce Ans. at 8

("[Marcie] has engaged in fraudulent dissipation of non-marital property belonging to [Scott]");

*id.* at 7 (seeking "appropriate offsets and credits [to be] applied to the benefit of [Scott] for the

money and assets that [Marcie] has already stolen"); *see also* Divorce Judgment at 37, 39 (noting

that both parties recognized Scott had transferred $100,000 connected to Prime to his assistant,

but that Marcie was making no claims to that money or to Prime more generally); N.J. App.

Opening Brief at 30, 31 (citing discussion before the divorce court concerning Marcie's

operation of Prime after Scott's conviction); N.J. App. Resp. at 126 (referencing documents

before the divorce court addressing Scott's transfer of Prime to his assistant).  After taking

evidence, Judge Bottinelli did not make any allocations to offset the supposed sabotaged sale of

Prime.  *See generally* Divorce Judgment.  With respect to the $75,000 in earnest money, Judge

Bottinelli allocated the funds remaining in the bank accounts to the parties, thereby accounting

for that sum.  *Id.* at 54.  Thus, the issue of rightful ownership of the earnest money and

---

[18]      In his complaint, Scott lists tax refunds, retirement accounts, cash, cash equivalents, salaries, and wages
among the assets at issue in this lawsuit.  Compl. ¶¶ 22(d), 22(e).  Scott never alleged that there was cash that had
not been deposited into an account that was distributed by the divorce judgment.

adjustments to account for any malfeasance associated with the attempted sale were resolved in the divorce proceeding, and Scott is estopped from relitigating the issue.

### f.   Rogers Avenue Enterprises

Rogers Avenue Enterprises had been sold prior to the commencement of the divorce proceedings.  Compl. ¶ 25(e)(iv).  Scott alleges that, prior to the sale, Marcie had been stealing money from Rogers Avenue Enterprises.  *Id.* ¶ 25(e)(ii).  The sale of Rogers Avenue Enterprises, and Marcie's alleged wrongful conduct with respect to that business, was considered at great length during the divorce proceedings.  N.J. App. Opening Brief at 28–30, 35–36 (reviewing the discussion of Rogers Avenue Enterprises before the lower court); N.J. App. Resp. Brief at 136–37 (same).  Marcie testified in the divorce proceeding that the proceeds from the sale of Rogers Avenue Enterprises went towards the mortgage on the Saddle River Property.  *Id.* at 137.  Judge Bottinelli, aware that Marcie had used the proceeds of the sale to pay the mortgage on the Saddle River Property and that Scott claimed that Marcie stole from the business in the process, allocated the Saddle River Property to Marcie.  *See* Divorce Judgment at 51–52.  Moreover, Judge Bottinelli did not award Scott any offsets in the equitable distribution to account for his claims — that Scott detailed at length before the divorce court — that Marcie had acted improperly with respect to Rogers Avenue Enterprises.  *Id.*  In short, Judge Bottinelli equitably distributed the property with Scott's claims in mind, and Rogers Avenue Enterprises had been sold prior to the divorce.  Because any claim with respect to entitlement to proceeds from Rogers Avenue Enterprises was necessarily accounted for in the divorce court's equitable distribution of the assets, Scott is estopped from re-litigating that issue.

### g.   TGAR

TGAR, like Rogers Avenue Enterprises, was sold prior to the divorce.  Compl. ¶ 25(d)(iv).  Scott alleges that, prior to the sale, Marcie funneled funds from TGAR to her own

bank account.  *Id.* ¶ 25(d)(ii).  As with Rogers Avenue Enterprises, the sale of TGAR was

considered at length in the divorce proceedings.  *See* N.J. App. Opening Brief at 28–29, 35–36

(reviewing the discussion of TGAR before the divorce court); N.J. App. Resp. Brief 118 n. 6,

133–137 (same).  Scott argued before the divorce court that he was entitled to the proceeds from

the sale of TGAR and that Marcie was holding $1 million that belonged to him that was

connected to that business.  Divorce Judgment at 50.  Judge Bottinelli found that Scott's

"assertions [as to TGAR] were not substantiated."  *Id.*  He further found with respect to TGAR

that although Scott "made varied and wild accusations," he had "failed to substantiate his claims

by submitting back-up documentation or other proofs . . . ."  *Id.* at 51.  Moreover, Marcie

testified that the proceeds from the sale of TGAR had been used to satisfy the mortgage on the

Woodside Property (which was ultimately awarded to Scott in the divorce judgment) and to pay

down the mortgage of the Saddle River Property (which was awarded to Marcie).  N.J. App.

Resp. Brief at 137; *see also* Divorce Judgment at 50 (noting that Marcie's testimony about

TGAR was "clear, concise and accurate," that she answered questions "without hesitation," and

that "overall, she, unlike the defendant, was found to be a credible witness").  Accordingly,

Judge Bottinelli distributed the assets with full knowledge that the disputed proceeds from the

TGAR sale had been used to pay down the mortgages on the Woodside and Saddle River

Properties.  Judge Bottinelli found it appropriate to allocate the Woodside Property to Scott and

the Saddle River Property to Marcie.  Because Judge Bottinelli, after hearing Scott's arguments,

determined Scott's ownership interest in any proceeds from the sale of TGAR, Scott is estopped

from relitigating the issue.

In short, because the issue of the ownership of all the assets pertinent to this lawsuit was

decided in the divorce proceedings and affirmed on appeal, Scott is estopped from re-litigating

those issues here.

### B.  The Issue Was Actually Litigated in the Prior Proceeding

The second factor in the collateral estoppel test — whether the issue was actually litigated in the prior proceeding — has also been met.  A matter is actually litigated when it was "properly raised, by the pleadings or otherwise, and [was] submitted for determination, and [was] determined." *Tobia v. Lakewood Bd. of Educ.*, No. 16-CV-4850, 2020 WL 7334209 at *15 (D.N.J. Dec. 14, 2020) (citations omitted).  In ascertaining whether something was properly raised and determined, courts will look at the depth to which a certain matter was discussed and considered by the court.  *See id.* *16.

There can be no serious dispute that the issue of ownership of assets was actually litigated in the divorce proceedings.  The parties argued and submitted evidence related to the ownership of the assets.  *See, e.g.*, N.J. App. Briefs, Dkt. 61-6 at 25, 27, 59, 76, 79, 80, 83–85 (McDonald Avenue Property); *id.* at 25, 27, 59, 76, 79, 80 (Grafe Street Property); *id.* at 26, 28, 59, 79, 80 (Fort Lauderdale Condo); *id.* at 37, 49, 59, 78–79, 119 (gold coins, bank accounts, personal property); *id.* at 30, 31, 126 (Prime); *id.* at 28, 29–30, 35–36, 136, 137 (Rogers Avenue Enterprises); *id.* at 28, 29, 35–36, 118 n. 6, 133–34, 136, 137 (TGAR).[19]  Judge Bottinelli assessed the facts presented through the testimony and evidence provided by Scott and Marcie and used the New Jersey equitable distribution criteria to determine who was the true owner of each asset (or entitled the proceeds from the sale of the asset).  *See generally* Divorce Judgment (applying N.J. Rev. Stat. § 2A:34-23.1 and caselaw to come to an equitable distribution of property).

In short, the matter of ownership of the assets at issue was actually litigated in the divorce proceeding.

---

[19]     The appellate briefs review each party's arguments made before the lower court with respect to each property and cite extensively to the voluminous lower court docket.

### C.  Considerations of Fairness Counsel in Favor of Applying Collateral Estoppel

Because collateral estoppel is an equitable doctrine, it should not be applied if it would be unfair to do so. *Wallace*, 2016 WL 5403088 at *3.  Factors that support the application of collateral estoppel include: conservation of judicial resources; avoidance of repetitious litigation; and prevention of waste, harassment, uncertainty, and inconsistency. *Id.*  Factors that counsel against application of collateral estoppel include: inability to obtain review of the prior judgment; whether the available relief in the two actions is different; lack of foreseeability at the time of the prior action that the issue would arise in subsequent litigation; and the ability of the precluded party to have a full and fair adjudication in the prior action. *Id.*

Each of the factors that counsel in favor of applying collateral estoppel applies here. Scott's lawsuit is a textbook example of harassment and repetitious litigation.  His sole objective appears to be punishing his ex-wife by filing lawsuit after lawsuit aimed at undoing the divorce judgment.  At this juncture, what is most fair is to allow Marcie to move forward with her life without being burdened by Scott's vexatious litigation.  Moreover, none of the factors that counsel against applying collateral estoppel is pertinent here.  Scott has obtained review of the divorce judgment; he filed two motions for reconsideration (which were denied) and an appeal (which affirmed the divorce judgment).  N.J. Order, Dkt. 61-6 at 184–89; N.J. App. Opinion at 23.  Scott had to know that if he chose to continue to fight with his ex-wife over assets that the issues raised and decided in the divorce would arise again in that subsequent litigation.  Scott had an opportunity to litigate these issues fairly and fully in the divorce proceedings: he litigated the division of assets for two years and prosecuted an appeal of the divorce judgment.  In short, the fairest course of action is to apply collateral estoppel and put an end to Scott's frivolous attempts to undo what is long done.

21

Scott argues that "the Supreme Court has long held that *res judicata* does not apply in the presence of 'fraud or collusion.'"  *See* Supp. Resp. at 4 n.2 (citing *Knauer v. United States*, 328 U.S. 654, 671 (1946); *Saud v. Bank of N.Y.*, 929 F.2d 916, 919 (2d Cir. 1991)).  The Court understands Scott to be arguing that there was some sort of fraud or collusion in the divorce proceedings, and that fraud or collusion should preclude application of collateral estoppel.

The cases cited by Scott are *res judicata* cases, but this Court need not consider whether a collusion or fraud exception also exists with respect to collateral estoppel.  Even if there is such an exception to collateral estoppel, Scott has not alleged that his divorce proceedings were infected by fraud or collusion.  Collusion, as an exception to the application of *res judicata*, refers to collusion between one party and the judge.  *See, e.g.*, *Universal Oil Prods. Co. v. Root Refin. Co.*, 328 U.S. 575 (1946) (holding that bribery of a judge tainted a prior judgment such that *res judicata* was inappropriate).  Scott has alleged no facts from which this Court could reasonably infer that Marcie, or any other Defendant, bribed or in any way colluded with Judge Bottinelli.  Fraud is an exception to the application of *res judicata* when there has been a fraud on the court; the exception does not apply just because common law fraud claims are asserted against an opposing party.  *See Harris Tr. & Sav. Bank v. Ellis*, 810 F.2d 700, 705 (7th Cir. 1987) (holding that *res judicata* cannot apply when there is fraud on the court because it "vitiates . . . judgment . . . [and] therefore the judgment is not binding").  "A fraud upon the court occurs where . . . 'a party has set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter by . . . unfairly hampering the presentation of the opposing party's claim or defense.'"  *Garcia v. Griffin*, No. 16-CV-2584, 2021 WL 1577679, at *1 (S.D.N.Y. Apr. 22, 2021) (quoting *N.Y. Credit & Fin. Mgmt. Grp. v. Parson Ctr. Pharmacy, Inc.*, 432 F. App'x 25, 25 (2d Cir. 2011) (summary order)).  Scott has not alleged that Marcie took action to trick the New Jersey court system into ruling in her favor.  If

anything, the New Jersey Court was overly accommodating to Scott, who missed almost every deadline and violated numerous court orders.  *See* Divorce Judgment at 8–19 (discussing at length Scott's failure to comply with court deadlines and orders).  Without any allegations of collusion or fraud on the court, any exception that might exist on that basis is inapplicable to this case.

## III.    Collateral Estoppel Bars All of Scott's Claims

In determining the ownership of the assets at issue, the New Jersey Superior Court necessarily resolved each cause of action brought by Scott in this lawsuit.[20]

Scott alleges that Marcie breached a fiduciary duty by intentionally causing the sale of Prime to fail and by stealing more than $7.5 million in assets from him.  Compl. ¶¶ 31-32.[21] Scott alleges that all Defendants engaged in civil conspiracy by helping Marcie steal his money and assets.  *Id.* ¶ 37.[22]  Scott alleges that all Defendants violated RICO by using the internet and interstate commerce to steal money and assets from him.  *Id.* ¶¶ 44, 47, 53.[23]  Scott alleges that

---

[20]    Scott contends that the divorce judgment explicitly precludes the application of collateral estoppel because it ends with the sentence, "[e]xcept as specifically addressed in this Opinion, the parties are left to their own devises [sic] to address such other claims not specifically addressed herein."  Compl. ¶ 25(b)(iv) (making this argument); Supp. Resp. at 2, 4 (same); Letter Resp. Dkt. 82 at 1, 2 (same).  But Scott's argument ignores both the beginning and end of the sentence.  For the reasons discussed in text, the ownership of the assets at issue was "specifically addressed" in the divorce judgment and is not one of the "other claims not specifically addressed [t]herein." Divorce Judgment at 54.  Accordingly, Scott's reliance on that statement is misplaced.

[21]    As this claim is only against Marcie, it is also barred by New Jersey's entire controversy doctrine.  *See supra* note 14.

[22]    New York law applies to Scott's tort claims because, given the location of the properties at issue, New York is the state with the most significant relationship to the actions alleged in the complaint.  *See U.S. Bank Nat'l Ass'n v. Bank of Am. Nat'l Ass'n*, 916 F.3d 143, 154 (2d Cir. 2019) (actions transferred under § 1404(a) follow the law of the transferor state); *Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 694 (11th Cir. 2016) (holding that Florida applies the "most significant relationship" test when considering conflict of law matters for tort claims (citations omitted)).  "There is no cause of action in New York for the substantive tort of conspiracy," *Vogt v. Witmeyer*, 212 A.D.2d 1013, 1013 (4th Dep't 1995) (citations omitted), and it is not clear from the Complaint what tort Scott alleges the Defendants conspired to commit.  In any event, because all of the substantive tort claims are being dismissed, the conspiracy claim must be dismissed as well.

[23]    Scott's RICO claim also fails because he has failed to allege any of the elements of a RICO claim.  He has failed to allege any predicate acts of racketeering activity, *see* 18 U.S.C. § 1961(5), and he has failed to allege an enterprise that would fall within the scope of a civil RICO claim, *see* 18 U.S.C. § 1964.

all Defendants, without authorization, received and liquidated his assets and funds.  *Id.* ¶ 56.[24]

Scott alleges that Marcie was unjustly enriched by assets that were not hers to receive.  *Id.* ¶ 62.

And, finally, Scott seeks an equitable lien and a constructive trust on the Saddle River Property,

as well as an injunction to prevent Marcie from using the allegedly ill-gotten funds to pay off

that mortgage.  *Id.* ¶¶ 68–70.

The common denominator of all of Scott's claims is that they are premised on his

ownership of various assets.  But ownership of all of those assets was at issue in the divorce

proceeding.  So regardless of how Scott dresses up his claims, they all seek to undo the divorce

judgment and to relitigate the issue of ownership of the assets.  Pursuant to collateral estoppel,

Scott is prevented from doing just that.

## IV.   Leave to Amend Is Denied and the Case Against the Moving Defendants Is Dismissed with Prejudice

Scott requests leave to amend his complaint, in the event the motion to dismiss is granted.

*See* Resp. at 2, 2 n.1, 7–8.  Leave to amend is denied because any amendment would be futile.

*See Friedl v. City of N.Y.*, 210 F.3d 79, 87 (2d Cir. 2000) (holding that leave to amend may be

denied if there is "substantial reason to do so, such as . . . futility." (citations omitted)).  Here, all

of Scott's claims fail as a matter of law because the issue of ownership of the assets is integral to

each cause of action and collateral estoppel prevents re-litigation of that issue.  No amendment to

the complaint can cure that impediment to this lawsuit.  Accordingly, leave to amend is denied,

and the claims against the moving Defendants are dismissed with prejudice.

---

[24]     Scott's claim for conversion is likely time barred.  Conversion claims have a three-year statute of
limitations under New York law, *see* N.Y. C.P.L.R. § 214(3), and the statute begins to run at the time of the tort,
*Vigilant Ins. Co. of Am. v. Hous. Auth. of El Paso, Tex.*, 87 N.Y.2d 36, 44 (1995).  The latest tortious conduct
alleged by Scott occurred in 2016; those claims were, therefore, time barred when this lawsuit was filed in 2020.

## CONCLUSION

For the reasons discussed above, Defendants' motion to dismiss is GRANTED.

The Clerk of Court is respectfully directed to close the open motion at docket entry 60.
The Clerk is further directed to terminate the following Defendants: Marcie Lyn Sanders,
Franklin Ury, Suzanne Ury, Michael Ury, Robinson Brog Leinwand Greene Genovese & Gluck
PC, Scott Lavin, A. Mitchell Greene, Anthony Domino Jr., Andrew Lankler, and Baker Botts
LLP.


**SO ORDERED.**

Date:  **September 24, 2021**
       **New York, NY**

                              **VALERIE CAPRONI**
                            **United States District Judge**

25